CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

10/17/2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JAMES TOLLE, | Civil Action No. 3:17CV00074 |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| POCKETSONICS, INC., ANALOGIC CORPORATION, dba ANALOGIC ULTRASOUND VIRGINIA CORPORATION, ANALOGIC LIMITED, JEFF POMPEO, TRAVIS BLALOCK, RONALD RIOS, and FARLEY PEECHATKA, | |
| Defendants. | |

Plaintiff James Tolle (hereinafter "Tolle"), by and through his attorneys, Tully Rinckey PLLC, as and for his Complaint against Defendants PocketSonics, Inc. (hereinafter "PocketSonics"), Analogic Corporation d/b/a Analogic Ultrasound Virginia Corporation (hereinafter "Analogic Corporation"), Analogic Limited ("Analogic Limited") (Analogic Corporation and Analogic Limited hereinafter referred to collectively as "Analogic"), Jeff Pompeo (hereinafter "Pompeo"), Travis Blalock (hereinafter "Blalock"), Ronald Rios (hereinafter "Rios"), and Farley Peechatka (hereinafter "Peechatka"), alleges as follows:

NATURE OF CLAIMS

1.      This is an action for damages brought pursuant to the *Uniformed Services Employment and Reemployment Rights Act* (hereinafter "USERRA"), 38 U.S.C. §§ 4301 *et seq*.

2.      Defendants PocketSonics, Analogic, Pompeo, Blalock, Rios, and Peechatka unlawfully discriminated against Tolle and/or subjected him to an unfair and hostile work environment motivated by animus against his military service, military background, military experience and/or veteran status.

1

3.      Defendants PocketSonics, Analogic, Pompeo, Blalock, Rios, and Peechatka willfully and repeatedly violated USERRA.

## JURISDICTION AND VENUE

4.      This action is within the jurisdiction of this Court, pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), insofar as the events and/or omissions giving rise to Tolle's claims occurred in this judicial district, and pursuant to 38 U.S.C. § 4323(c)(2), insofar as Analogic Corporation maintains a place of business in this judicial district.

## PARTIES

6.      Tolle was a resident of the Commonwealth of Virginia. After starting employment with PocketSonics in or around February 2011, Tolle was a resident of the County of Prince William, but travelled to Charlottesville, Virginia, for work with PocketSonics. In or around September 2011, Tolle moved to Albemarle County until the end of his employment with PocketSonics in or around September 2013, at which time Analogic failed to hire Tolle. Tolle then moved to, and currently resides in, the County of Prince William.

7.      PocketSonics is/was a corporation incorporated under the laws of the State of Delaware and registered as a foreign business corporation in the Commonwealth of Virginia with offices in Charlottesville, Virginia.

8.      Analogic Corporation is/was a corporation incorporated under the laws of the Commonwealth of Massachusetts and registered as a foreign business corporation in the Commonwealth of Virginia, doing business as Analogic Ultrasound Virginia Corporation, with offices in Charlottesville, Virginia.

9.     At all material times hereto, Analogic Limited is/was a corporation incorporated under the laws of the Commonwealth of Massachusetts, with offices in Peabody, Massachusetts.

10.     Upon information and belief, Pompeo is/was a resident of the Commonwealth of Virginia, former Chief Executive of PocketSonics, and had the decision-making authority to control the terms of Tolle's employment pursuant to 38 U.S.C § 4303(4).

11.     Upon information and belief, Blalock is/was a resident of the Commonwealth of Virginia, former Chief Technical Officer of PocketSonics, and had the decision-making authority to control the terms of Tolle's employment pursuant to 38 U.S.C § 4303(4).

12.     Upon information and belief, Rios is/was a resident of the Commonwealth of Massachusetts, Vice President of Product Development Point of Care Ultrasound at Analogic, and had the decision-making authority to control the terms of Tolle's employment pursuant to 38 U.S.C § 4303(4).

13.     Upon information and belief, Peechatka is/was a resident of the Commonwealth of Massachusetts, Vice President of Advanced Healthcare Technologies at Analogic, and had the decision-making authority to control the terms of Tolle's employment pursuant to 38 U.S.C § 4303(4).

14.     Upon information and belief, Analogic had a minority interest in the ownership of PocketSonics at the time Tolle was employed by PocketSonics. At least one (1) Analogic management representative was an active member of the PocketSonics Governing Board for the duration that Tolle was employed by PocketSonics.  In or about September 2013, Analogic and PocketSonics merged and, upon information and belief, Analogic is the successor in interest to PocketSonics.

<u>FACTUAL ALLEGATIONS</u>

**Tolle's Military Background**

15.     At all times relevant hereto, Tolle was a veteran of the United States Navy Reserve (hereinafter "Navy Reserve").

16.     During the time period from on or about January 19, 2007 to on or about January 6, 2009, Tolle deployed to Afghanistan as part of Operation Enduring Freedom. For his service during this deployment, Tolle received the Afghanistan Campaign Medal with Bronze Campaign Star and the North Atlantic Treaty Organization Medal for International Security Assistance Force. While deployed in support of Operation Enduring Freedom, Tolle was awarded the Army Commendation Medal for contributing significantly to the operational capability of the Afghan National Army and Police. Tolle was also awarded the Meritorious Service Medal for performance of duty in a combat zone which reflected distinct credit upon himself, Combined Joint Task Force Phoenix, United States Central Command and the United States Navy. Tolle also qualified for the Global War on Terrorism Expeditionary Medal, and he previously was awarded the Global War on Terrorism Service Medal while on active duty military orders with the Joint Staff Global Operations Directorate in or around 2005. In Afghanistan, Tolle volunteered for extra missions in a combat environment after his own Task Force repeatedly suffered combat losses. Tolle had a record of completing missions despite challenging odds and without loss of any of the men assigned. Upon information and belief, Tolle's Commanders and former employers prior to PocketSonics would testify to Tolle's ability to work well with others and successfully deal with high stress environments, including life-threatening situations.

17.     On or about July 26, 2009, Tolle completed his last active duty assignment with the Navy Reserve.

4

**Tolle's Employment by PocketSonics**

18.     In or around February 2011, Tolle was hired at PocketSonics as a Senior Engineer. PocketSonics developed a handheld ultrasound device used for medical applications. Tolle had a lead role in implementing the operating system, the user interface, technical work, and development of the handheld ultrasound device. Tolle also conducted research, wrote, developed, and tested software for the device.

19.     In or around September 2011, Tolle was honorably discharged and separated from the Navy Reserve.

20.     PocketSonics employed two (2) managers, Pompeo and Blalock. It also employed five (5) full-time employees and two (2) part-time employees. Most full-time employees, including Tolle, were Senior Scientists or Engineers who worked directly with Blalock.

**Discriminatory Conduct of PocketSonics, Pompeo, and Blalock**

21.     During Tolle's employment with PocketSonics, management took disparate and discriminatory actions against Tolle as compared to its non-veteran employees. Under Pompeo's and Blalock's leadership, PocketSonics enforced a culture of bias and discriminatory animus against the military, which was unwelcoming to a veteran like Tolle, and instituted policies and practices which held Tolle's background and veteran status against him. Also, Pompeo specifically refused to recognize, utilize, and/or appreciate Tolle's considerable experience that he gained in the military.

22.     On or about September 11, 2011, Pompeo contributed to a culture of bias and discriminatory animus against the military at PocketSonics by scheduling a company retreat that had nothing to do with recognizing the September 11, 2001 terror attacks. Moreover, after Tolle, who was in the Pentagon on September 11, 2001, obtained permission to not attend the company

retreat so he can pay respects at Arlington Cemetery, Pompeo criticized Tolle for not participating in the retreat.

23.    On or about December 29, 2011, Tolle wrote an e-mail to Pompeo regarding his experience from the Navy, specifically with respect to leadership and fair management of workplace issues.  Tolle wrote, "As a Naval Officer where I was in a leadership position for organizations of hundreds and even thousands of personnel, I was held accountable to ensure that complaints or issues from those under me would be resolved fairly with no bias." Pompeo responded with bias and discriminatory animus towards Tolle's military service and background, stating "We are not the Navy. In fact, we're the antithesis of the Navy. We are an entrepreneurial startup that purposely chooses to have minimal structure, requirements, rules and procedures. If you desire that type of structure, then PocketSonics is the wrong place for you."   Pompeo's response is direct evidence of bias and discriminatory animus against the military generally and specifically Tolle's military service and background.   Such bias and discriminatory animus cannot be more clearly stated than Pompeo's statement that "PocketSonics is the wrong place for you [Tolle]".

24.    From the time of Pompeo's e-mail until the end of Tolle's employment, PocketSonics management including Pompeo and Blalock established a pattern of mistreatment of Tolle which included practices and actions which favored the non-veteran employees over Tolle, based on his military service and background.   Pompeo's and Blalock's bias and discriminatory animus was demonstrated repeatedly since the time of Pompeo's e-mail including the following actions by Pompeo and Blalock which unfairly and adversely impacted Tolle:

        a.   Denial of compensation including awards, royalties, stock options and future work;

b. Criticism of Tolle in the workplace, including an adverse performance evaluation which was disparately severe to Tolle when compared to the non-veteran employees who had documented worse behavior and were not criticized by management;

c. Preventing Tolle from performing in the lead role in which he was hired commensurate with his past leadership experience, demotion to a non-lead role when others on Tolle's team were not demoted, and refusal to consider Tolle's direct experience with customer concerns and past leadership experience to provide Tolle with future work opportunities;

d. Criticism and defamation of him personally with unsubstantiated attacks on his conduct and character, such attacks causing direct harm to Tolle's reputation; and

e. Conspiring to keep plans for adverse actions against Tolle secret among management while management representatives repeatedly lied to Tolle and all other employees in order to conceal their biased and discriminatory action against Tolle.

25.    During the years from 2011 to 2013, the aforementioned bias and discriminatory animus exhibited by Pompeo (as well as Blalock) permeated the work environment at PocketSonics and continued through the end of Tolle's employment. PocketSonics management, primarily through Pompeo and Blalock, exhibited a pattern of actions and practices which discriminated against Tolle and which were based, wholly or in part, on Tolle's military service and background.  Not only did the comments of PocketSonics management continue to show bias and discriminatory animus towards Tolle's military service and background, but Pompeo and Blalock acted on that bias and discriminatory animus.  Specifically, Pompeo and Blalock incorporated their bias and discriminatory animus into PocketSocnics's policies and took actions to treat Tolle unfairly based on his military service and background, to the point of showing favor

7

towards non-veteran employees who had less relevant experience for some aspects of the work compared to Tolle.

26.     During the years from 2011 through 2013, Pompeo and Blalock further exhibited their bias and animus towards Tolle by often responding negatively or dismissively when Tolle mentioned his military service and offered inputs based on his military service throughout Tolle's employment.   The bias and discriminatory animus exhibited by Pompeo and Blalock over the almost two year period following Tolle's first e-mail referencing his military service culminated in Pompeo and Blalock influencing Analogic's decision not to hire Tolle, in connection with the merger of the companies, while at all times they publicly claimed to all employees and to Tolle that Analogic would hire Tolle and all PocketSonics employees.

27.     In or around December 2011, Pompeo created an employee rating system and over the following weeks, orchestrated the company's adoption of the rating system which, upon information and belief, favored the non-military experience and background of the non-veteran employees, while grading Tolle's relevant military experience and background far less favorably than the non-veteran employees.   Upon information and belief, Analogic knew the aforementioned system disfavored Tolle or, in the alternative, failed to look behind the rating system to learn of the disparate treatment to which Tolle was subjected.

28.     The following specific facts are evidence of the culture of bias and animus created by PocketSonics management which did not welcome Tolle's skills, traits and experience based on his military service and background.   Many of these facts demonstrate the use of PocketSonics discriminatory and unfair employee rating system which was implemented by Pompeo after his hostile comments toward the military.

29.     In or around November, 2011, Pompeo demonstrated preferential treatment of

8

non-veteran employees compared to Tolle. Jermaine Headley (hereinafter "Headley"), a non-veteran employee, was given assignments related to operating system development despite Tolle, a veteran, having substantially more experience with operating system development from his military experience. Pompeo demonstrated bias and animus towards Tolle by making an adverse remark in Tolle's performance review because Tolle simply asked Headley why he was working on the operating system software.

30.   In or around December 2011, PocketSonics provided Tolle with a lower bonus payment which, upon information and belief, was lower than bonus payments made to other non-veteran employees.

31.   In or around December 2011, Jake Wegman (hereinafter "Wegman") wrote inappropriate and negative comments to Pompeo and/or Blalock which attacked and disparaged Tolle: "While I believe that...[Tolle] has improved over the last couple of months in his dealings with others in the office, including myself, I would be lying if I were to say that his behavior in the future isn't a concern." Pompeo and Blalock did nothing to curb the inappropriate and disparaging comments of Wegman, a non-veteran employee, against Tolle, the only veteran in the office. Despite there being no evidence of Tolle commenting negatively on his co-workers at PocketSonics, Wegman's written comments show that PocketSonics management seemed to welcome Tolle's peers commenting on his future in the company. The apparent inaction of Pompeo and Blalock to reign in the highly inappropriate personal attacks against Tolle by other employees was an example of how Pompeo and Blalock promoted a biased and unwelcoming culture at PocketSonics. Pompeo and Blalock cultivated a work environment where it appeared to be open season for any other employee to attack or disparage a veteran like Tolle without consequences, and upon information and belief such action by Pompeo and Blalock was

motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

32.    In or around 2012, Pompeo and Blalock gave Tolle highly critical and adverse comments as part of performance assessments and management feedback. Pompeo and Blalock made comments towards Tolle that were biased, exaggerated, and reinforced a negative stereotype of veterans in the workplace.  As examples, Pompeo improperly used phrases such as "highly volatile arguments," "volatility," "stormed out of the office in frustration," "grumpy," and unduly targeted Tolle as the "center of some difficulties related to team dynamics" in his assessment comments.  In addition to the aforementioned language used by Pompeo against Tolle, which is typical of false stereotypes used against veterans to unfairly paint them as dangerous in the work place, Pompeo criticized Tolle's military background and past use of the military chain of command by negatively commenting: "[Tolle]...tends to prefer...formal chains-of-command hierarchies...."  Upon information and belief, the aforementioned performance assessments and feedback were motivated by a preference in favor of non-veterans and bias and discriminatory animus against Tolle on the basis of his military service and background.

33.    On or about October 12, 2012, Wegman wrote in an e-mail to another employee that he would "deal with . . . [Tolle] tomorrow when I've [Wegman] hopefully cooled off and don't want to rip his [Tolle] head off." While Wegman's comments were baseless, unnecessary, and unprofessional, neither Pompeo, who was copied on the e-mail, nor Blalock did anything to ameliorate such behavior by non-veteran employees. Pompeo and Blalock's inaction in response to Wegman's comments stand in stark contrast to management's rebukes against Tolle for far less severe statements about his co-workers.  Such disparate treatment by Pompeo and Blalock was, upon information and belief, motivated by bias and animus towards Tolle and his military service

and background.

34.     In or around 2012, upon information and belief, no other non-veteran employee received a performance assessment that was as critical or adverse as that given to Tolle, even when other employees like Wegman demonstrated inappropriate behavior, including volatile, threatening, and grumpy behavior toward Tolle, which was known to management.   Upon information and belief, such disparate treatment was motivated by bias and showing discriminatory animus against Tolle on the basis of his military service and background.

35.     In or around 2012, PocketSonics provided Tolle with a Royalty Program award which, upon information and belief, was lower than such payments to non-veteran employees. Pompeo told Tolle that PocketSonics management used relative assessments of employees based on Pompeo's (biased and discriminatory) rating system to determine Royalty awards. Tolle also was told that every non-veteran, full-time employee received an award higher than Tolle's.

36.     In or around the beginning of 2012, Pompeo and Blalock began implementing a re-organization that adversely impacted Tolle's position and assigned duties which, upon information and belief, was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

37.     In or around 2012, Pompeo and Blalock told Tolle that they were demoting him from his lead role as operating system developer and that other full-time employees would assume more responsibilities for the operating system software development as part of a re-organization of the software organization. Tolle objected to this re-assignment because it represented a demotion.   Upon information and belief, the demotion was motivated by a bias which favored the non-military backgrounds of other employees and showed discriminatory animus against Tolle on the basis of his military service and background.

38.     In or around 2012, Pompeo and Blalock told Tolle that everyone on the software team would be treated the same way and there would be no lead roles permanently assigned to anyone after the changes were fully implemented. This was a lie, and the re-organization that was actually implemented by Pompeo and Blalock did not treat everyone on the software team the same and, in fact, there were lead roles – though not for Tolle – as alleged in more detail below.  Pompeo and Blalock's conduct of the re-organization, which demoted Tolle and treated Tolle disparately compared to other non-veteran employees, was upon information and belief motivated by bias and showed discriminatory animus against Tolle on the basis of his military service and background.

39.     In or around the beginning of 2013, the new software organization was implemented. Tolle was removed by Pompeo and Blalock from the lead role of operating system development.  Upon information and belief, Pompeo and Blalock's removal of Tolle from the lead role was motivated by bias and showed discriminatory animus against Tolle on the basis of his military service and background.

40.     During all of 2013, the full-time employee who was part of the software development team and previously assigned the role as algorithm lead, Drake Guenther (hereinafter "Guenther"), continued to perform as the lead for algorithm software development, pursuant to the re-organization implemented by Pompeo and Blalock.  Upon information and belief, the preferential treatment of Guenther, a non-veteran employee, compared to the treatment of Tolle was motivated by bias and discriminatory animus which favored Guenther's non-military academic background over Tolle's military service and background.

41.     In or around the beginning of 2013, upon information and belief, no other non-veteran employee was demoted from a lead role during this time as part of the re-organization,

and such adverse treatment of Tolle was motivated by bias and showed discriminatory animus against Tolle on the basis of his military service and background.

42.    In or around 2013, Morten Paulsen, an Analogic employee, worked closely with Tolle for many months.  His comments from his work with Tolle are in stark contrast to the biased performance assessments and management comments made by Pompeo and Blalock against Tolle, in which Paulsen stated: "Jim was hardworking and productive," his "work was of high quality and it was obvious that he was quite knowledgeable", that Tolle "was courteous, helpful, quite good at providing instructions," that "Jim is also very thorough...if he feels something needs to be discussed, he will openly take it up in the group".

43.    Morten Paulsen's direct observation of Tolle's work in or around 2013 led to his comments which confirmed the versatility and breadth of Tolle's experience and directly contradicted PocketSonics' management statements which claimed that Tolle refused to work on anything other than the Linux kernel:  "As it was a small team, most of us worked in all areas, and Jim was no exception" and his "work was of high quality and it was obvious that he was quite knowledgeable".

44.    In or around April, 2013, PocketSonics management awarded Tolle a stock option benefit which, upon information and belief, was disparately smaller than every other full-time non-veteran employee.  Pompeo told Tolle that management used Pompeo's employee rating system to make the awards.

**Analogic: Merger with PocketSonics and Further Discriminatory Conduct Against Tolle**

45.    On or about July 31, 2013, during a PocketSonics team teleconference with Analogic, Headley publicly derided Tolle in the presence of all PocketSonics and Analogic team members, stating to Tolle: ". . . you are ridiculous" or words to the effect. Headley's comments

were so unprofessional and embarrassing that Pompeo muted the phone. Upon information and belief, no corrective action or critical assessments were taken against Headley, despite the fact that Tolle complained to Pompeo about Headley's statement. The actions by Headly, and corresponding inaction by Pompeo and Blalock, showed discriminatory animus against Tolle. Upon information and belief, the failure of Pompeo to take corrective action with respect to Headly and/or to make any critical assessment of Headley's conduct was motivated by bias and showed discriminatory animus against Tolle on the basis of his military service and background.

46.     Upon information and belief, PocketSonics received the first phase of Small Business Innovation Research contract or contracts from the United States Army (hereinafter "Army") for research of handheld medical devices in or around 2013.

47.     During Tolle's employment with PocketSonics, PocketSonics failed to obtain a follow-on contract with the Army prior to the company's acquisition by Analogic. Upon information and belief, PocketSonics's failure to obtain the follow-on contract was motivated by anti-military attitudes at Analogic.

48.     In or around 2013, Pompeo and Blalock told Tolle on several occasions that the Analogic management had an unusual hostile and averse opposition towards contracting with the Army.

49.     Upon information and belief, proposals of PocketSonics in or around 2013 had documented the Army's urgent need to bring life-saving ultrasound medical devices to the battlefield.

50.     In or around the end of summer of 2013, Tolle overheard Peechatka tell management of PocketSonics that Analogic was averse to contracting with the Army for handheld ultrasound devices and was unwilling to give credibility to the Army's urgent need for

life-saving devices on the battlefield. Tolle overheard Peechatka make the following mocking and disrespectful statement: ". . . like we are in a hot war right now" or words to that effect. The statements by Peechatka reflect a bias and animus towards the military among Analogic management, consistent with the bias and animus towards the military which Tolle experienced from PocketSonics management.

51.     In or around August 2013, Rios and Peechatka met with all PocketSonics employees to discuss Analogic's pending acquisition of PocketSonics.  During a group meeting with the employees, Peechatka discussed the schedule for the acquisition and explained that PocketSonics employees would become Analogic employees at the end of the acquisition. Peechatka said that they had failed to bring the Human Resources information to share with the PocketSonics employees, but that that would be provided to each employee in order to help convince all employees to stay on the team.  After the group meeting, Rios and Peechatka met with each PocketSonics employee individually, including Tolle.

52.     During the aforementioned August 2013 meetings, Rios and Peechatka promised that all PocketSonics employees, including Tolle, would retain their positions and receive a permanent position with Analogic after the merger with PocketSonics.

53.     During the aforementioned August 2013 meetings, Tolle told Rios and Peechatka that he would like to offer his leadership and management experience from his service as a Navy officer. Tolle offered to take on more responsibility after the acquisition between PocketSonics and Analogic.  Tolle said that if he was hired by Analogic, he would be more than willing to continue working in Charlottesville in order to help the team at PocketSonics complete the current development through approval of the Analogic product by the FDA, which was expected to take several more months.  Tolle requested that Analogic management consider giving him

15

opportunities to use his extensive leadership and management skills from being a senior Navy Officer after the acceptance of the Sonic Window product by the FDA.

54.     On or around August 22, 2013, after Tolle and the other employees received no information from Analogic management (Rios and Peechatka) on how Analogic would convert their positions under the new organization, Tolle wrote Rios an e-mail requesting more information.  In this e-mail, Tolle reaffirmed his interest in working in Charlottesville until the submission of the PocketSonics product to the FDA.

55.     Pompeo and Blalock were already aware of Tolle's military service and, upon information and belief, Rios and Peechatka were made aware of it prior to the aforementioned meeting but, in any event, were aware of it no later than their discussion of Tolle's service during the aforementioned meeting.  The topic of Tolle's military service and background was also discussed with Rios and Peechatka during a company dinner in or around August 2013.

56.     In or around August 2013, Pompeo privately defamed Tolle to Rios with untrue and distorted characterizations of Tolle's behavior and temperament, attempting to paint the picture to Analogic management that Tolle was a 'difficult' employee who should not be hired by Analogic.  Pompeo told Rios false allegations of Tolle being sent home due to his conduct, which never happened, and used anti-veteran and anti-military stereotypes which tried to convince Rios that Tolle was not fit to stay in the workplace, being "extremely combative" and not accommodating to the others on the team.   Pompeo falsely told Rios that he had been on the verge of terminating Tolle on multiple occasions but Pompeo failed to provide Rios any evidence of such actions against Tolle.  Pompeo also recommended that Analogic not hire him.  Upon information and belief, the aforementioned statements and conduct were based on Pompeo's belief that Tolle did not fit into the culture of PocketSonics which was motivated by bias and

discriminatory animus against Tolle based on unfair stereotypes of veterans and military members and Tolle's military service and background.

57.     In or around August 2013, Blalock used biased language that reinforced negative stereotypes about persons with military service when reporting to Rios that Tolle was "combative" and "very disruptive," which upon information and belief was used to paint an unfair picture of Tolle to Analogic management in order to prevent Tolle from being hired and was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

58.     Upon information and belief, in or around August 2013, Rios used Pompeo and Blalock's biased and unfair inputs regarding Tolle in Rios's decision not to hire Tolle. Upon information and belief, Rios's decision not to hire Tolle was either motivated by bias and discriminatory animus against Tolle on the basis of his military service and background, or in the alternative was the result of the failure of Rios or other Analogic management to fully review the circumstances and look behind the bias and discriminatory animus of PocketSonics, Pompeo, and Blalock. Upon information and belief, Rios concealed his decision not to hire Tolle for some time prior to the acquisition of PocketSonics while coordinating with Peechatka, Pompeo and Blalock to misrepresent the intentions of Analogic to hire all PocketSonics employees, including Tolle, during the finalization of the merger.

59.     On or about September 6, 2013, all PocketSonics employees individually met with Pompeo.

60.     Upon information and belief, on or about September 6, 2013, each PocketSonics employee who met with Pompeo, all of whom were non-veterans, with the exception of Tolle who is a veteran, was offered permanent employment with Analogic. Upon information and

17

belief, this preferential treatment of the non-veterans and disparate disadvantageous treatment of Tolle was motivated by bias and showed discriminatory animus against Tolle on the basis of his military service and background.

61.     During the aforementioned September 6, 2013 meeting between Pompeo and Tolle, Pompeo kept his and Blalock's aforementioned recommendations to Rios to not hire Tolle a secret from Tolle, which upon information and belief was motivated by a desire to conceal Pompeo's bias and discriminatory animus against Tolle on the basis of his military service and background.

62.     After this meeting, Pompeo continued to state falsely that all employees at PocketSonics would be offered permanent employment by Analogic. However, Pompeo failed to divulge to Tolle that Pompeo and Blalock were actually recommending to Rios that he not hire or retain Tolle as a permanent employee with Analogic. Upon information and belief, Pompeo's deception was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

63.     Upon information and belief, Peechatka and Rios assisted in the concealment of Pompeo's and Blalock's efforts to take adverse action against Tolle and prevent Analogic from hiring him by publicly stating to all employees and Tolle in or around August 2013 that Analogic planned to hire all PocketSonics employees at the end of the merger.  As such, Peechatka's, Rios's, and Analolgic's actions therefore also discriminated against Tolle.

64.     The aforementioned discrimination by Peechatka, Rios, and Analogic is established in Analogic's action against Tolle, which upon information and belief was motivated by bias and discriminatory animus towards Tolle based upon his military service and background, and was influenced by Pompeo and Blalock.

65.     On or about September 6, 2013, Pompeo offered Tolle a temporary three (3) month contract position. Pompeo told Tolle that Analogic believed that Tolle was a "problem" or a "liability" or words to that effect. Pompeo further stated that Tolle's employment would be permanently terminated should Tolle not accept the change in status to a contractor.  Pompeo did not disclose to Tolle at that time that he was telling Analogic management that Tolle was a problem and recommending that Analogic not hire Tolle.  Upon information and belief, this treatment of Tolle was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

66.     Upon information and belief, on or about September 6, 2013, all non-veteran PocketSonics employees were offered regular full-time non-contract employee positions with Analogic with substantially the same or better compensation, bonuses, positions, and/or benefits, while Tolle, the only veteran employee, was not.  Upon information and belief, this preferential treatment of the non-veterans and disparate disadvantageous treatment of Tolle was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

67.     On or about September 12, 2013, Pompeo provided Tolle with a version of a Bonus & General Release Agreement (hereinafter "Release Agreement"), a version of which Tolle eventually signed.  The Release Agreement does not bar the present lawsuit.

68.     Upon information and belief, the aforementioned Release Agreement was unfair and disproportionate as Tolle did not receive various payments as compared to the non-veteran employees at PocketSonics.  Upon information and belief, Tolle was presented with the Release Agreement due to bias and discriminatory animus against Tolle on the basis of his military service and background.

69.     The initial Release Agreement provided to Tolle did not include any payment to

Tolle for severance. Apparently, PocketSonics did not plan on paying Tolle a fair severance payment for his years of service despite their plan to terminate him and deny Tolle future employment with Analogic, which upon information and belief was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

70.     On or around September 12, 2013, Tolle complained to Pompeo about the unfairness of the Release Agreement. Tolle told Pompeo that he would not accept any agreement from PocketSonics that did not include a severance payment for the years of service which he had faithfully given to PocketSonics prior to his layoff.

71.     In or around September 2013, PocketSonics awarded Tolle a stock option conversion total which, upon information and belief, was lower than other such options offered to other non-veteran employees.  Upon information and belief, this conduct was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

72.     In or around September 2013, Tolle's stock option to cash conversation was approximately $12,723. However, upon information and belief, Guenther, Wegmen, and Headley each had an estimated stock option to cash conversation of approximately $22,000. Pompeo told Tolle that each of the other employees receiving stock options at the same time as Tolle were rated as having a higher value to the company, which further exhibited Pompeo's and Blalock's discriminatory treatment towards Tolle's experience and service.  Upon information and belief, such disparate treatment of Tolle was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

73.     In or around September 2013, Tolle's ownership share at the time of his termination was approximately 0.2% while, upon information and belief, other employees' shares were approximately 0.4% to 0.5%, which was motivated by bias and discriminatory

animus against Tolle on the basis of his military service and background.

74.    In or around September 2013, Pompeo submitted a memo to the PocketSonics Compensation Committee recommending lower bonuses for Tolle during the Analogic acquisition, where generally the same criteria from the employee rating system which Pompeo used for the Royalty Sharing Program were used to rate Tolle at the bottom of the list of employees. Upon information and belief, Pompeo's use of the employee rating system to get PocketSonics management to approve disparately lower bonuses for Tolle compared to all non-veteran full-time employees was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

75.    In or around September 2013, Tolle received a bonus payment which, upon information and belief, was not commensurate with such payments to non-veteran employees. Tolle only received an approximately $13,500 "Transaction Bonus" and an approximately $2,000 "Special Bonus." An estimated average of awards or bonuses to other non-veteran full-time employees is believed to be approximately $33,000 each, which upon information and belief was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

76.    In or around September 2013, upon information and belief, Analogic placed a "Special Payment" bonus into escrow on behalf of non-veteran employees Guenther, Headley and Wegman. The estimated amount placed into escrow for each non-veteran employee was approximately $33,000. This was documented in the Engagement Agreement between Analogic and PocketSonics that required the setting aside of approximately $99,000 for the subsequent payment of a bonus to the three (3) foregoing non-veteran employees. A Special Payment bonus was neither paid to Tolle nor placed into escrow for him which, upon information and belief, was

motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

77.    On or around September 20, 2013, PocketSonics merged with Analogic and became the successor in interest to PocketSonics.

78.    On or around September 20, 2013, Tolle was upon information and belief the only employee, and the only military service veteran, who was permanently terminated from his employment with PocketSonics and not hired by Analogic. Upon information and belief, the failure to hire Tolle was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

**Freedom of Information Act Request**

79.    On or around December 23, 2014, Tolle filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain the entire file pertaining to the investigation of Tolle's complaint, filed with the United States Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP"), alleging that PockestSonics and Analogic had violated the *Vietnam Era Veterans' Readjustment Assistance Act of 1974*, as amended, 38 U.S.C. § 4212.

80.    On or around January 28, 2015, Tolle received a partial acceptance and partial denial of his FOIA request, which contained portions of the investigative file from OFCCP.

81.    Contained in the FOIA response was the Analogic letter, dated May 9, 2014, including statements providing that "Mr. Pompeo alerted Mr. Rios to some of the events . . . noting that Mr. Tolle was a 'difficult' employee. He [Pompeo] detailed Mr. Tolle's history of being extremely combative and not accommodating to the others on the team . . . Notably, he also told Mr. Rios that he had been on the verge of terminating Mr. Tolle on multiple occasions,

and recommended that Analogic not hire him . . ."   Upon information and belief, the aforementioned statements and conduct were motivated by bias and discriminatory animus against Tolle based on unfair stereotypes of veterans and military members and Tolle's military service and background.

82.     In the letter of May 9, 2014, Analogic reported that Blalock also used biased language that reinforced negative stereotypes about persons with military service when reporting to Rios that Tolle was "combative" and "very disruptive," which upon information and belief was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

83.     In the letter of May 9, 2014, Analogic reported that Pompeo submitted a memo to the PocketSonics Compensation Committee recommending lower bonuses for Tolle during the Analogic acquisition, where management was "...relying on generally the same criteria that it had used in determining the Royalty Sharing Pool points," where Tolle's "background and expertise in software development" and his "Uniqueness/Breadth of Skill Set" were considered to put him "again at the bottom".   Upon information and belief, Pompeo's use of the employee rating system to get PocketSonics management to approve disparately lower bonuses for Tolle compared to all non-veteran full-time employees was motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

84.     In the letter of May 9, 2014, Analogic included Tolle's e-mail subsequent to Tolle's meeting with Analogic management in which Tolle expressed an interest in being hired by Analogic, working in Charlottesville in a commensurate engineering position similar to what he had at PocketSonics, helping the Charlottesville team complete the Sonic Window product and submit the device to the FDA for approval, and looking for new opportunities where Analogic

can use his extensive leadership and management experience from his Navy career some time down the road after submission of the Sonic Window device.

85.    Contained in the FOIA response, the Analogic letter of May 9, 2014, described the employee rating system which was put in place by Pompeo in or around the beginning of 2012 and was used repeatedly to unfairly and adversely impact Tolle through the remainder of his employment.  Upon information and belief, Analogic's own assessment of the employee rating system which was used for almost two years by Pompeo and Blalock to take adverse action against Tolle found that PocketSonics management's employee rating system consistently rated Tolle as the lowest value employee compared to the non-veteran full-time employees.

86.    Contained in the FOIA response was a statement from Analogic, dated May 9, 2014, stating that ". . . Mr. Rios decided to accept the earlier recommendations of Mr. Pompeo and Dr. Blalock not to offer Mr. Tolle a regular position at Analogic."  Upon information and belief, the aforementioned statements and conduct were either motivated by bias and discriminatory animus against Tolle on the basis of his military service and background, or in the alternative were the result of the failure of Analogic to fully review the circumstances and look behind the bias and discriminatory animus of PocketSonics, Pompeo and Blalock.

87.    Contained in the FOIA response was a statement from Rios, dated October 22, 2014, noting that both Pompeo and Blalock affected his decision not to hire or retain Tolle as a regular employee after Analogic's acquisition of PocketSonics was final in or around September 2013. Although the aforementioned statements show that Rios was planning to offer everyone at PocketSonics permanent position in or around August, 2013, Rios changed his plan and decided not to hire or retain Tolle after specific input from Pompeo and Blalock. Rios stated ". . . nobody else was jumping up and down telling me not to hire him."  Upon information and belief, the

24

aforementioned statements and conduct were either motivated by bias and discriminatory animus against Tolle on the basis of his military service and background, or in the alternative were the result of the failure of Analogic to fully review the circumstances and look behind the bias and discriminatory animus of PocketSonics, Pompeo and Blalock.

88.   Contained in the FOIA response was a statement from Rios, dated October 22, 2014, stating that during the initial meetings in or around August 2013, ". . . everyone would be retained after the acquisition of PocketSonics by Analogic was completed." This turned out to be a misrepresentation, which was concealed from Tolle until on or around September 6, 2013, when Pompeo told Tolle he would be laid off.  Upon information and belief, the aforementioned statements and conduct were either motivated by bias and discriminatory animus against Tolle on the basis of his military service and background, or in the alternative were the result of the failure of Analogic to fully review the circumstances and look behind the bias and discriminatory animus of PocketSonics, Pompeo and Blalock.

89.   Contained in the FOIA response was a statement from Pompeo, dated October 23, 2014, acknowledging that, prior to Pompeo's and Blalock's input, Rios "wanted to keep the entire PocketSonics team together after the acquisition" of PocketSonics by Analogic.   Upon information and belief, the failure to retain and/or hire Tolle as part of the "team" was either motivated by bias and discriminatory animus against Tolle on the basis of his military service and background, or in the alternative was the result of the failure of Analogic to fully review the circumstances and look behind the bias and discriminatory animus of PocketSonics, Pompeo and Blalock.

90.   Contained in the FOIA response was a statement by Pompeo dated October 23, 2014, which claimed falsely that Tolle would say things like "Shut up" and "You don't have the

experience I do". Tolle never said these things. Upon information and belief, Pompeo's false claims regarding Tolle's alleged statements were anti-veteran and anti-military stereotypes and were motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

91.     Contained in the FOIA response was a statement by Pompeo, dated October 23, 2014, in which he responded to the OFCCP inquiry "Were there any warning notices issued to or disciplinary measures taken against Mr. Tolle during his 1 1/2 year tenure with PocketSonics over his behavior?" by admitting that he had no written personnel records to substantiate his allegations against Tolle, and that the only action he took was "Only in conversation and e-mail." In fact, Pompeo's claims about Tolle's performance and conduct are untrue, in addition to being unsubstantiated by written personnel records, and were motivated by bias and discriminatory animus against Tolle on the basis of his military service and background.

92.     Contained in the FOIA response was a statement by Blalock, dated October 23, 2014, in which he claimed falsely that Tolle was "yelling at other people". Blalock also commented negatively on Tolle's veteran status, stating:  "I think Jim is a real outlier, he's nothing like the other veterans I know." Upon information and belief, Blalock's false and negative statements about Tolle were motivated by bias and showed discriminatory animus against Tolle on the basis of his military service and background.

93.     Contained in the FOIA response was a statement by Rios, dated October 22, 2014, in which he stated that veterans like Tolle should not be hired "if the person is socially incompetent".   Upon information and belief, the aforementioned statement reflects an inappropriate criteria for hiring that was either motivated by bias and discriminatory animus against Tolle on the basis of his military service and background, or in the alternative was the

result of the failure of Analogic to fully review the circumstances and look behind the bias and discriminatory animus of PocketSonics, Pompeo and Blalock.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

94.     Tolle realleges and incorporates the above allegations of this complaint as if set forth fully herein.

95.     USERRA prohibits discrimination in employment against individuals who have been called to duty in the uniformed service.

96.     Specifically, 38 U.S.C. § 4311(a) makes it unlawful for an employer or prospective employer to deny a veteran "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" because of the veteran's military service, background, and/or veteran status.

97.     PocketSonics, Analogic, Pompeo, Blalock, Rios, and Peechatka discriminated against Tolle and/or subjected him to a hostile work environment in violation of USERRA, when motivated by bias and discriminatory animus against Tolle on the basis of his military service, background, and/or veteran status they subjected Tolle to a performance rating system that favored non-veteran employees; gave Tolle lower awards, bonuses, stock options, and compensation compared to similarly situated non-veteran employees; subjected Tolle to anti-military comments and negative performance assessments and feedback, including anti-military language and/or sentiments; gave non-veterans preferential treatment over Tolle in assigning duties, work, and supervisory roles; deceived Tolle by telling him that he would be retained and/or hired by Analogic after the merger with PocketSonics, which was false; and ultimately failing to retain and/or hire Tolle in a position with Analogic.

98.    As a direct and proximate cause of the aforementioned actions of PocketSonics, Analogic, Pompeo, Blalock, Rios, and Peechatka, Tolle has suffered injuries and damages, including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.

99.    Such violations of USERRA by PocketSonics, Analogic, Pompeo, Blalock, Rios, and Peechatka were willful and Tolle requests an award of liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## AS AND FOR A SECOND CAUSE OF ACTION

### *Individual Liability under USERRA*

100.    Tolle realleges and incorporates the above allegations of this complaint as if set forth fully herein.

101.    USERRA defines "employer" as any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities. 38 U.S.C. §4303(4)(A). As such, individuals may be held personally liable under USERRA if they have a control over the plaintiff's employment.

102.    Pompeo, Blalock, Rios, and Peechatka, collectively and/or independently, each had the decision making authority over one or more of the following aspects of Tolle's employment, including subjecting Tolle to a performance rating system that favored non-veteran employees; gave Tolle lower awards, bonuses, stock options, and compensation compared to similarly situated non-veteran employees; subjecting Tolle to anti-military comments and negative performance assessments and feedback, including anti-military language and/or sentiments; giving non-veterans preferential treatment over Tolle in assigning duties, work, and supervisory roles; deceiving Tolle by telling him that he would be retained and/or hired by

Analogic after the merger with PocketSonics, which was false; and ultimately failing to retain and/or hire Tolle in a position with Analogic.

103.    Tolle was discriminated against and/or subjected to a hostile work environment, in violation of USERRA, when motivated by bias and discriminatory animus against Tolle on the basis of his military service, background, and/or veteran status Pompeo, Blalock, Rios, and/or Peechatka, collectively and/or independently, took the aforementioned actions against Tolle.

104.    As a direct and proximate cause the aforementioned actions of Pompeo, Blalock, Rios, and Peechatka, Tolle has suffered injuries and damages, including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering to Tolle and his family.

105.    Such violations of USERRA by Pompeo, Blalock, Rios, and Peechatka were willful and Tolle requests an award of liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## JURY DEMAND

106.    Tolle demands a trial by jury with respect to all issues and claims properly before a jury.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Tolle demands judgment as follows:

A.    Loss of past and future earnings and loss of past and future benefits pursuant to 38 U.S.C. § 4323(d)(1)(B);

B.    Liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C);

C.    An order requiring compliance pursuant to 38 U.S.C. § 4323(d)(1)(A);

D.    Costs of suit, inclusive of reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); and,

E.      Appropriate interest, costs and disbursements, and such other and further relief as the Court may deem proper.

Dated: October 17, 2017
      New York, NY

                                        Respectfully submitted,

                                        TULLY RINCKEY PLLC

                                        By: _____

                                              Kevin J. Shehan, Esq.
                                              Bar No. 73562
                                              777 Third Avenue, 22nd Floor
                                              New York, New York 10017
                                              Tel.  646-201-9100
                                              Fax  646-705-0049
                                              Email:  kshehan@tullylegal.com

                                              *Attorneys for Plaintiff James Tolle*