CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 05 2018

JULIA C. DUDLEY, CLERK
BY: A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JAMES TOLLE, | ) |
| | ) Civil Action No. 3:17CV00074 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| POCKETSONICS, INC. et al., | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| Defendants. | ) |

Plaintiff James Tolle has filed a complaint against defendants Analogic Corporation, Analogic Limited (collectively, "Analogic"), PocketSonics, Inc. ("PocketSonics"), Jeff Pompeo, Travis Blalock, Ronald Rios, and Farley Peechatka, alleging they discriminated against him on the basis of his veteran status, in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, et seq. The case is presently before the court on the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the court will grant the motion in part and deny it in part.

## Background

Tolle, a veteran of the United States Navy Reserve, completed his last active duty assignment in July 2009 and was honorably discharged from the Navy Reserve in September 2011. Compl. ¶¶ 15, 17, 19. Meanwhile, in February 2011, Tolle began working as a senior engineer for PocketSonics, a technology company that developed a handheld ultrasound device. Id. ¶ 18. The company employed nine individuals, including Chief Executive Officer Jeff Pompeo and Chief Technical Officer Travis Blalock. Id. ¶¶ 10-11, 20. Tolle alleges that Pompeo failed to appreciate Tolle's military experience, exhibited bias toward Tolle for that service, and gave preferential treatment to the other employees of PocketSonics, all of whom

were non-veterans. Id. ¶¶ 21-41.

By 2013, healthcare technology company Analogic became interested in acquiring PocketSonics. Prior to the completion of the merger, two of Analogic's vice presidents, Ronald Rios and Farley Peechatka, met with each of the PocketSonics employees to discuss the pending acquisition. Id. ¶¶ 12-13, 51. The plaintiff alleges that around this time Pompeo recommended that Rios not hire Tolle. Id. ¶¶ 56, 61.

On September 6, 2013, all PocketSonics employees, except Tolle, were offered permanent positions at Analogic and substantially the same or better compensation than they had received at PocketSonics. Id. ¶ 66. As for Tolle, Pompeo offered him a temporary three-month contract position, which Tolle declined. Id. ¶ 65.

PocketSonics then provided Tolle with a severance agreement entitled the "Bonus & General Release Agreement" ("Severance Agreement").* Id. ¶ 67. The agreement gave Tolle twenty-one days to consider it. Dkt. No. 12-1, at ¶ 8. On September 13, 2013, Tolle executed a final Severance Agreement, under which he received a transaction payment of $13,500, a severance payment of $13,500, and a special bonus payment of $2,000, all in "valuable consideration" for his general release of claims against PocketSonics. Id. ¶¶ 1, 3. The release provides as follows:

> I hereby fully and forever generally release and discharge PocketSonics, its current, former and future parents, subsidiaries, affiliated companies, related entities, employee benefit plans, and their fiduciaries, predecessors, successors, officers, directors, stockholders, agents, employees and assigns (collectively, the "Company") from any and all claims, causes of action, and liabilities up through the date of my execution of this Release. The claims subject to this release

---

* The court may consider the Severance Agreement without converting this motion to dismiss into a motion for summary judgment because the Severance Agreement "'was integral to and explicitly relied on in the complaint,' and there is no challenge to its authenticity." Facchetti v. Bridgewater Coll., 175 F. Supp. 3d 627, 635 (W.D. Va. 2016) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)).

include, but are not limited to, those relating to my employment with PocketSonics and/or any predecessor to PocketSonics and the termination of such employment which will be effective as of the Termination Date. In understanding the terms of this Release and my rights, I have been advised to consult with an attorney of my choice prior to executing this Release. I understand that nothing in this Release shall prohibit me from exercising legal rights that are, as a matter of law, not subject to waiver.

Id. ¶ 2.

On October 17, 2017, the plaintiff filed a complaint against the defendants, alleging discrimination on the basis of his veteran status. The complaint also alleges individual liability against defendants Pompeo, Blalock, Peechatka, and Rios.

On January 12, 2018, the defendants moved to dismiss the complaint under Rule 12(b)(6), arguing that the Severance Agreement bars all of Tolle's USERRA claims and that Tolle has not sufficiently alleged a claim for individual liability against Blalock, Peechatka, or Rios. Plaintiff concedes for purposes of this motion that Blalock and Peechatka are not employers under USERRA and are therefore not subject to individual liability in this case. The court held a hearing on the motion on February 21, 2018, and the matter is now ripe for disposition.

## Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see also Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" and that "permit[s] the court

3

to infer more than the mere possibility of misconduct." Id. at 678-79 (internal quotation marks omitted). The plaintiff must rely on "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

## Discussion

Courts have recognized that a veteran may waive his or her rights under USERRA. See, e.g., Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1108 (6th Cir. 2010); Cornelius v. United Parcel Serv., Inc., No. 11 Civ. 3206(GBD), 2012 WL 975053, at *1 (S.D.N.Y. Mar. 21, 2012). The ability to waive USERRA rights is reflected in the statute's legislative history, which provides that USERRA rights belong to the veteran, who "'may waive those rights, either explicitly or impliedly, through conduct.'" Cornelius, 2012 WL 975053, at *1. "'[A]ny waiver must, however, be clear, convincing, specific, unequivocal, and not under duress.'" Id.; see also Wysocki, 607 F.3d at 1108 (citing H.R. Rep., No. 103-65, at 20 (1993), reprinted in 1994 U.S.C.C.A.N. 2449, 2453 for the same proposition).

USERRA further provides as follows:

> (a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.
>
> (b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C.A. § 4302. In applying this provision, "the critical inquiry" is whether the rights the veteran received by signing the waiver were more beneficial than the rights he or she gave up. Wysocki, 607 F.3d at 1107. The court recognizes that "USERRA's provisions are to be liberally construed in favor of veterans." Id. (citing Gordon v. Wawa, Inc., 388 F.3d 78, 81 (3d Cir. 2004).

In this case, the Severance Agreement used clear and unambiguous language to waive the plaintiff's USERRA rights. The Severance Agreement expressly states that the plaintiff waives "any and all" claims in connection with his employment with PocketSonics and his termination of such employment. Dkt. No. 12-1, at ¶ 1. Other courts have found such broad language to be sufficiently clear to waive USERRA rights. See, e.g., Cornelius, 2012 WL 975053, at *1; Landers v. Dep't of Air Force, No. CH-4324-11-0500-I-1, 2011 WL 5983577, at *4 (M.S.P.B. Nov. 30, 2011); see also Jolley v. Dep't of Hous. & Urban Dev., 299 F. App'x 966, 969 (Fed. Cir. 2008) (noting in dicta that "[a]lthough the settlement does not mention USERRA" it indicated the employer's intent to avoid later liability arising from the plaintiff's employment). The court further finds that the Severance Agreement contains sufficient language to cover claims against Analogic as it refers to future parents and successors.

Plaintiff attempts to distinguish Landers and Jolley because they involved settlement agreements rather than severance agreements, but the court finds no meaningful difference between the two. Both types of agreements are contracts, and under traditional contract principals, courts enforce clear and unambiguous contract provisions without resort to extrinsic evidence. See Nestorio v. Assocs. Commercial Corp., 250 B.R. 50, 55 (D. Md. 2000), aff'd sub nom. In re Nestorio, 5 F. App'x 283 (4th Cir. 2001) (citing 11 Samuel Williston, Williston on

Contracts § 31:4, at 277-78 (4th ed. 1999)); cf. Cornelius, 2012 WL 975053, at *1 (recognizing that a release of "any and all causes of action" that is "freely entered into . . . clearly waives a right to pursue a cause of action" under USERRA and "is binding") (internal quotation marks omitted)).

Plaintiff also cites the outlying case of Vahey v. Gen. Motors Co., No. 11-cv-00661 (JDB), 2012 WL 9390844 (D.D.C. Mar. 1, 2012). In Vahey, the Court ruled that a general waiver of "all claims, grievances, lawsuits, demands, and causes of action, known or unknown" was not clear enough to waive the plaintiff's USERRA claims, recognizing that "veteran status was not mentioned" in the waiver and that § 4302(b) and its legislative history are unique. Id. at *1, *4-6 (alterations omitted). In light of the above analysis and case law, the court is constrained to disagree with the approach taken in Vahey.

Although the court finds the release in the Severance Agreement to be clear and unambiguous, the court does not believe that the record has been sufficiently developed to determine whether the Severance Agreement gave Tolle benefits that were greater than those that he gave up in signing the agreement. The difficulty the court has on the present record is determining what benefits Tolle would have received absent the alleged discrimination against him based on his military service. Accordingly, the court believes that limited discovery into a comparison of benefits, including whether the other employees received severance agreements, is necessary. Because a determination that the Severance Agreement releases all of plaintiff's USERRA claims would be dispositive, the court declines to decide whether plaintiff's claim for individual liability can proceed against Rios at this time.

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be granted in part and denied in part to allow limited discovery into a comparison of benefits, as described above. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 5th day of March, 2018.

_____
Senior United States District Judge