CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 30 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JAMES TOLLE, )
 )  Civil Action No. 3:17CV00074
 Plaintiff, )
 )  **MEMORANDUM OPINION**
v. )
 )  By: Hon. Glen E. Conrad
POCKETSONICS, INC., et al., )  Senior United States District Judge
 )
 Defendants. )

Plaintiff James Tolle filed this employment discrimination action under the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4335, against PocketSonics, Inc. ("PocketSonics"), Analogic Corporation, Analogic Limited (collectively, "Analogic"), Jeff Pompeo, Travis Blalock, Farley Peechatka, and Ronald Rios. The defendants previously moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Tolle's claims are barred by a Bonus & General Release Agreement ("Release Agreement") that Tolle signed in consideration for certain bonus and severance payments, and that Tolle had not sufficiently stated a claim against Blalock, Peechatka, or Rios. In response, Tolle conceded that Blalock and Peechatka are not subject to individual liability under USERRA. However, he opposed the defendants' motion in all other respects.

On March 5, 2018, the court issued a memorandum opinion and order granting in part and denying in part the defendants' motion to dismiss. Although the court found the Release Agreement to be clear and unambiguous, the court did not believe that the record had been sufficiently developed to determine whether the Release Agreement provided benefits that were greater than those that Tolle gave up in signing the agreement, rendering it enforceable under § 4302 of USERRA. In particular, the court found that "limited discovery into a comparison of

benefits, including whether the other employees received severance agreements, [was] necessary." Mar. 5, 2018 Mem. Op. 6, Dkt. No. 24. Because a ruling on the enforceability of the Release Agreement could be dispositive of Tolle's claims, the court declined to decide whether Tolle stated a plausible claim against Rios.

The parties have completed the limited discovery permitted by the court. The defendants have since filed a renewed motion to dismiss the complaint or, in the alternative, for summary judgment. The court held a hearing on the motion via teleconference on August 28, 2018. The motion has been fully briefed and is now ripe for review.

## Background

Tolle is a veteran of the United States Navy Reserve. Compl. ¶ 15, Dkt. No. 1. He completed his last active duty assignment in July of 2009. Id. ¶ 17. Tolle was honorably discharged from the Navy Reserve in September of 2011. Id. ¶ 19.

In February of 2011, Tolle began working as a senior engineer for PocketSonics, a technology company that developed a handheld ultrasound device known as the "Sonic Window." Id. ¶ 18; see also Decl. of Jeffrey Pompeo ("Pompeo Decl.") ¶ 10, Dkt. No. 47. Tolle remained with PocketSonics until September 19, 2013, the day before the company merged with Analogic, another technology company. Compl. ¶¶ 77–78. Prior to the merger, PocketSonics employed eight individuals, including Tolle. Defs.' Resp. to Pl.'s 1st Set of Interrogs. 2, Dkt. No. 46-1. The other employees were Chief Executive Officer Jeff Pompeo, Travis Blalock, Drake Guenther, Michael Fuller, Jermaine Headley, Karen Morgan, and Jacob Wegman. Id. Tolle alleges that Pompeo failed to appreciate Tolle's military experience, exhibited bias toward Tolle for that service, and gave preferential treatment to the other employees of PocketSonics, all of whom were non-veterans. Compl. ¶¶ 21–41.

In August of 2013, two of Analogic's executive officers, Ronald Rios and Farley Peechatka, met with all of the PocketSonics employees to discuss Analogic's pending acquisition of PocketSonics. Id. ¶ 51. Tolle alleges that "Rios and Peechatka promised that all PocketSonics employees, including Tolle, would retain their positions and receive permanent positions with Analogic after the merger with PocketSonics." Id. ¶ 52. During the meetings, Tolle advised Rios and Peechatka of his military background and requested that they "consider giving him opportunities to use his extensive leadership and management skills from being a senior Navy Officer." Id. ¶ 53.

On September 4, 2013, PocketSonics' Board of Directors ("Board") held a meeting to discuss matters related to the pending merger with Analogic. Board Meeting Minutes 1, Dkt. No. 51-1. The Board also discussed the proposed payment of bonuses to certain employees. The minutes from the meeting indicate that the Board approved the payment of "Transaction Bonuses" to four employees, including Tolle, which would be contingent upon the successful completion of the merger with Analogic and the execution of a release agreement by the recipient. Id. 7. The Board also approved the payment of "FDA Bonuses" to the same four employees, which would be contingent upon the submission of the Sonic Window to the Food and Drug Administration ("FDA"). Id. The Board proposed to pay Tolle a Transaction Bonus in the amount of $13,500 and an FDA Bonus in the same amount. Id. The bonuses proposed for the other three employees ranged from $19,125 to $54,000 each. Id.

The Board also approved the payment of "Special Pre-Closing Bonuses" to all eight PocketSonics employees. Id. 8. The Board proposed to pay Tolle and four other employees a Special Pre-Closing Bonus of $2,000. The remaining bonuses ranged from $15,000 to $30,000. Id. The Board agreed that the Special Pre-Closing Bonuses would be paid immediately prior to the effectiveness of the proposed merger. Id.

3

Analogic ultimately declined to offer Tolle a permanent position with the company following the merger. According to the complaint, this decision was made by Rios, upon the recommendation of Pompeo and Blalock. See, e.g., Comp. ¶ 87 (describing a written statement from Rios in which he noted that "both Pompeo and Blalock affected his decision not to hire or retain Tolle as a regular employee after Analogic's acquisition of PocketSonics was final"). Instead, Analogic offered Tolle a three-month consulting arrangement, which Tolle rejected. Decl. of Patricia Dumas ("Dumas Decl.") ¶ 3, Dkt. No. 46. The proposed consulting agreement was contingent upon the company's acquisition of PocketSonics by September 13, 2013. Consulting Agreement ¶ 1, Dkt. No. 46-2. Under the terms of the proposed consulting agreement, Tolle would have been paid a maximum amount of $6,000 per week during the three-month period specified in the agreement. Id. ¶ 6.

All of the other PocketSonics employees were offered and accepted regular employment with Analogic, either before or immediately after the merger was finalized on September 20, 2013. Dumas Decl. ¶¶ 4–10. The documents delineating the terms and conditions of their employment with Analogic, including their respective compensation packages, have been filed under seal with the court. See Sealed Exs. to Dumas Decl., Dkt. No. 50. Four of the individuals who accepted full-time engineering positions with Analogic were offered annual base salaries that exceeded $100,000. Id. They were also given the opportunity to participate in Analogic's annual bonus program and its standard benefit program that included medical, dental, and life insurance, disability protection, and the company's 401(k) plan. Id. Two of the individuals who accepted full-time engineering positions also received Analogic stock units as a sign-on equity award, as well as the opportunity to receive an additional equity award as part of Analogic's long-term incentive program. Id.

On September 13, 2013, Tolle executed a Bonus & General Release Agreement ("Release Agreement"), under which Tolle agreed that his employment would terminate on the business day prior to the closing of PocketSonics' merger with Analogic, and that he desired to "resolve certain matters including those related to the provision of certain bonus opportunities to [Tolle] from PocketSonics, the release of claims by [Tolle] against PocketSonics, and the termination of [his] employment." Release Agreement 1, Dkt. No. 47-3. By signing the Release Agreement, Tolle acknowledged that he had been given at least 21 days to consider the agreement, and that he had been advised to consult with an attorney about the agreement's terms. Id. ¶ 8. Under the terms of the Release Agreement, Tolle received a "Transaction Bonus Payment" of $13,500, a "Severance Payment" of $13,500, and a "Special Bonus Payment" of $2,000, all in "valuable consideration" for his general release of claims against PocketSonics. Id. ¶¶ 1, 3. The release provision of the agreement states as follows:

> I hereby fully and forever generally release and discharge PocketSonics, its current, former and future parents, subsidiaries, affiliated companies, related entities, employee benefit plans, and their fiduciaries, predecessors, successors, officers, directors, stockholders, agents, employees and assigns (collectively, the "Company") from any and all claims, causes of action, and liabilities up through the date of my execution of this Release. The claims subject to this release include, but are not limited to, those relating to my employment with PocketSonics and/or any predecessor to PocketSonics and the termination of such employment which will be effective as of the Termination Date. In understanding the terms of this Release and my rights, I have been advised to consult with an attorney of my choice prior to executing this Release. I understand that nothing in this Release shall prohibit me from exercising legal rights that are, as a matter of law, not subject to waiver . . . .

Id. ¶ 2. In a separate paragraph, Tolle also agreed as follows: "I understand and agree that by entering into this Release I am waiving any and all rights or claims I might have under the Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act, and that I have received compensation beyond that to which I was previously entitled." Id. ¶ 8.

5

Tolle further acknowledged that he had seven days after signing the Release Agreement in which to revoke it, and that the agreement would not be enforceable until after the revocation period expired. Id.

On September 20, 2013, the date on which the merger became effective, three of the PocketSonics employees who accepted engineering positions with Analogic entered into a "Side Letter Agreement" concerning the payment of a bonus contingent on the submission of the Sonic Window to the FDA for "510(k) clearance" ("FDA Bonus"). Side Letter Agreement, Dkt. No. 50-8. The amounts of the FDA Bonuses ranged from $19,125 to $54,000. Id. at 2. An earlier version of Tolle's Release Agreement included a contingent FDA Bonus in the amount of $13,500. See Pompeo Decl. Ex. D., Dkt No. 47-4. That bonus was ultimately replaced with the Severance Payment in the same amount. The parties dispute whether Tolle negotiated this particular change. See 2nd Tolle Decl. ¶ 2, Dkt. No. 59-1.

All seven of the other PocketSonics employees received the "Special Bonus Payment" approved by the Board. Pompeo Decl. ¶ 12. Four of the other employees received a Special Bonus Payment in the amount of $2,000, the same amount paid to Tolle. Board Meeting Minutes 5. However, one of the employees who accepted an engineering position with Analogic received a Special Bonus Payment in the amount of $25,000. Id. Additionally, five of the other PocketSonics employees received a "Transaction Bonus Payment." Pompeo Decl. ¶ 12. The Transaction Bonus Payments made to three of the employees who accepted full-time engineering positions with Analogic ranged from $19,125 to $54,000. Board Meeting Minutes 5.

Tolle has filed declarations in response to the pending motion. In the first declaration, Tolle states that he signed the Release Agreement "in order to obtain the only employee benefits [he] received in connection with the PocketSonics-Analogic merger," and that his "subjective aim . . . was not to obtain benefits superior to those under USERRA." 1st Tolle Decl. ¶ 1. Tolle

further avers that at the time he signed the Release Agreement, he "was not aware . . . of the degree to which the similarly situated non-veteran coworkers received benefits superior [to his]." Id. ¶ 2. Tolle emphasizes that he did not become aware of all the amounts paid to other employees until after the instant action was filed, and that he did not "believe that USERRA and/or [his] 'veteran'-related rights were at issue in signing the [Release] Agreement." Id. ¶¶ 2, 5. Although Tolle was advised to consult with an attorney, he did not retain legal counsel to assist him in deciding whether to sign the agreement. Id. ¶ 6. Instead, he spoke to a "former employer . . . whom [he] trusted to give [him] advice on contract issues." Id.

In response to Tolle's first declaration, the defendants submitted an email indicating that Tolle learned of the Side Letter Agreement regarding FDA Bonus Payments by no later than September 20, 2013, which was within the time period in which he could have revoked the Release Agreement. In a second declaration submitted in response, Tolle avers that he inadvertently learned about the Side Letter Agreement on September 19, 2013, but that "as of the afternoon of September 20, 2013, the last day of the revocation period for the . . . Release Agreement, [he] still did not have knowledge of the specific payments made to other employees." 2d Tolle Decl. ¶ 1. Likewise, Tolle states that he had "no knowledge of the particular Transaction Bonuses, Special Bonuses and stock payment amounts" made to other PocketSonics employees. Id.

## Standards of Review

PocketSonics, Analogic, Pompeo, and Rios (collectively, "the defendants") have filed a renewed motion to dismiss the complaint or, in the alternative, for summary judgment, arguing that Tolle's USERRA claims are barred by the Release Agreement. The defendants have also renewed their previous argument that the complaint does not state a plausible claim for individual liability against Rios.

Because both sides have presented matters outside the pleadings to support their respective positions on the issue of whether Tolle's USERRA claims are barred by the Release Agreement, the court will treat the defendants' motion as a motion for summary judgment with respect to that issue. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant a motion for summary judgment, the court must "view[] the facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Woollard v. Gallagher, 712 F.3d 865, 873 (4th Cir. 2013).

In light of the court's ruling on the first issue, it must also consider whether the complaint states a plausible claim for individual liability against Rios. Because the defendants solely challenge the sufficiency of the allegations against Rios, and do not rely on any matters outside the pleadings to support their position, the court will review this portion of the defendants' motion under Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 234 (4th Cir. 1999). To survive dismissal under this rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2000)). When ruling on a motion to dismiss, the court "must assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff." Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (alteration in original) (internal quotation marks omitted).

## Discussion

"USERRA was enacted, in part, 'to prohibit discrimination against persons because of their service in the uniformed services.'" Hill v. Michelin N. Am., Inc., 252 F.3d 307, 311 (4th Cir. 2001) (quoting 38 U.S.C. § 4301(a)(3)). Accordingly, USERRA provides that any person who is a member of a uniformed service, or has performed service in a uniformed service, "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership . . . [or] performance of service . . . ."\* 38 U.S.C. § 4311(a). USERRA further provides that "[a]n employer shall be deemed to have engaged in actions prohibited . . . under subsection (a), if the person's membership [or] . . . service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . or . . . service." Id. § 4311(c). "The rights conferred under USERRA as against a private employer may be enforced by bringing a claim in federal district court by the military person aggrieved." Mace v. Willis, 259 F. Supp. 3d 1007, 1015 (D.S.D. 2017) (citing 38 U.S.C. § 4323(a)(3)). "Remedies available for violations of USERRA include: (1) injunctive relief, (2) lost wages or benefits suffered as a result of a USERRA violation, and (3) liquidated

---

\* USERRA defines the term "benefit" or "benefit of employment" as

> any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental and unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

9

damages in an amount equal to the amount of lost wages or benefits if the employer's violation was willful." Id. (citing 38 U.S.C. § 4323(d)(1)).

In the instant case, Tolle claims that PocketSonics, Analogic, Pompeo, and Rios violated his rights under USERRA by, inter alia, providing him with "lower awards, bonuses, stock options, and compensation compared to similarly situated non-veteran employees," and by "ultimately failing to retain and/or hire [him] in a position with Analogic," all because of his prior military service. Compl. ¶ 97. In the pending motion, the defendants argue that Tolle's USERRA claims are barred by the Release Agreement that Tolle executed on September 13, 2013, and that the complaint fails to state a claim for individual liability against Rios. The court will address each of the defendants' arguments in turn.

## I. The Enforceability of the Release Agreement

Courts have recognized that the text and legislative history of USERRA indicate that a veteran may waive his rights under the statute. See, e.g., Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1108 (6th Cir. 2010). To be enforceable, however, a waiver must be "clear and unambiguous," and it must pass muster under 38 U.S.C. § 4302. Id. at 1107–08. Section 4302, which addresses USERRA's relation to other laws, plans, and agreements, provides as follows:

> (a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.
>
> (b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of any additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302.

Only a few courts have had the opportunity to consider whether a contractual waiver of rights is enforceable under this "unique" statutory provision. Vahey v. Gen. Motors Co., No. 1:11-cv-00661, 2012 U.S. Dist. LEXIS 189423, at *13 (D.D.C. Mar. 1, 2012); see also Wysocki, 607 F.3d at 1109 (Martin, J., concurring) (noting that § 4302 "is an exceedingly strange statute" and that he could not "recall ever having encountered anything remotely similar in [his] more than thirty years on the bench"). Those that have been tasked with applying § 4302 in the context of contractual waivers have recognized that the "critical inquiry" is whether the rights or benefits the veteran received by signing the waiver were more beneficial than the rights or benefits he agreed to give up. Wysocki, 607 F.3d at 1107; see also Washington v. Shell Oil Co., No. 2:17-cv-08825, 2018 U.S. Dist. LEXIS 97971, at *5 (E.D. La. June 12, 2018) (quoting Wysocki, supra); Vahey, 2012 U.S. Dist. LEXIS 189423, at *13 (characterizing § 4302 as "permitting a waiver of rights only for a more beneficial agreement"). This reading is consistent with the regulations implementing § 4302, which explain that "USERRA establishes a floor, not a ceiling, for the employment and reemployment rights and benefits of those it protects." 20 C.F.R. § 1002.7. "In other words, an employer may provide greater rights and benefits than USERRA requires, but no employer can refuse to provide any right or benefit guaranteed by USERRA." Id. This reading is also consistent with the recognition that "USERRA's provisions are to be liberally construed in favor of veterans." Wysocki, 607 F.3d at 1108; see also Hill, 252 F.3d at 313 ("Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries.").

The United States Court of Appeals for the Sixth Circuit's opinion in Wysocki appears to be the only appellate decision squarely addressing whether a release executed by an employee passed muster under § 4302. In that case, the plaintiff alleged that International Business Machines ("IBM") terminated his employment upon his return from military service, in violation

11

of USERRA. Wysocki, 607 F.3d at 1103. On the same day that his employment was terminated, the plaintiff signed a release as part of a separation plan that he negotiated with IBM. Id. at 1104. Under the terms of the release, the plaintiff agreed to waive all claims that he might have against IBM of any kind, "'including, but not limited to [claims of] discrimination based on . . . veteran status . . . .'" Id. The release gave the plaintiff a twenty-one-day period to consider it prior to signing, and a seven-day period after signing to revoke his acceptance. Id. The plaintiff received a gross severance payment of $6,023.65 in exchange for signing the release. Id. The release specifically instructed the plaintiff to consult with an attorney prior to signing it. Id. The plaintiff accepted the severance payment and did not exercise his right to revoke his acceptance. Id. Thereafter, he filed suit against IBM for violating his rights under USERRA. Id. at 1103.

On appeal from the district court's decision granting summary judgment to IBM, the Sixth Circuit held that the release was valid and enforceable under § 4302. Id. at 1108–09. Prior to reaching its decision, the Court noted that USERRA's "legislative history clearly envisioned that veterans would be able to waive their individual USERRA rights by clear and unambiguous action." Id. at 1008. The Court reasoned that "the ability to waive their USERRA rights without unnecessary court interference, if they believe that the consideration they will receive for waiving those rights is more beneficial than pursuing their rights through the courts, is both valuable and beneficial to veterans." Id. The Court then turned to the record in the case before it, observing that the release at issue used "clear and unambiguous language and involved a valuable amount of consideration." Id. The Court emphasized that the release informed the plaintiff that it "covered claims based on 'veteran status.'" Id. The Court determined that "[t]his clear and unambiguous language informed Wysocki that he was waiving his USERRA rights and, in exchange for signing the Release, Wysocki received over $6,000.00." Id. Under the

circumstances presented, the Sixth Court found that "it appear[ed] from the record that Wysocki understood that the Release eliminated his USERRA rights, that he signed the Release because he believed that the rights provided in the Release were more beneficial than his USERRA rights and, therefore, that the Release [was] exempted from the operation of § 4302(b) by § 4302(a)." Id. Notably, the Court emphasized that "Wysocki [had] not presented any argument or evidence to the contrary," and that it could not "find any such evidence in the record." Id. The Court went on to note that there was no evidence of incapacity, fraud, misrepresentation, or duress, and that Wysocki was encouraged to consult with an attorney. Id. Based on the record before it, the Court held that "§ 4302 [did] not invalidate the Release." Id.

In a concurring opinion, Judge Boyce Martin emphasized that Wysocki relied strictly on an unsuccessful legal argument in response to IBM's motion, "instead of coming forward with evidence to dispute whether the Release resulted in a situation more beneficial than his USERRA rights." Id. at 1109 (Martin, J., concurring). Accordingly, Judge Martin noted that the case before it was "not the right vehicle for broad statements about the application of section 4302," and that he "applaud[ed] the majority's exercise of restraint in deciding [the] case narrowly instead of permitting these bad facts to result in bad law." Id. In concurring in the majority's decision, Judge Martin once again emphasized that Wysocki "did not present any evidence that would suggest that the money that he received for signing the Release was less beneficial than his USERRA rights, and thus inadequate under section 4302(a)." Id. at 1110. Judge Martin noted that "[a]n affidavit likely would have sufficed to create a question of fact" on this issue. Id. "Because Wysocki presented no such evidence," Judge Martin agreed with the majority that "the proper conclusion on this record is that the Release resulted in a situation more beneficial to Wysocki than his USERRA rights and was thus enforceable under section 4302(b)." Id.

13

Based on certain language in Wysocki, some district courts have interpreted this provision of USERRA "to require a subjective belief that the consideration provided by the waiver agreement was more beneficial than the rights provided by USERRA." Washington, 2018 U.S. Dist. LEXIS 97971, at *5 (citing Wysocki, 607 F.3d at 1108 ("Clearly, the ability to waive their USERRA rights without unnecessary court interference, if they believe that the consideration they will receive for waiving those rights is more beneficial than pursuing their rights through the courts, is both valuable and beneficial to veterans.")). In Washington, which was before the court on a motion to dismiss, the complaint expressly alleged that the plaintiff "could not determine whether the rights provided in the Release were more beneficial than the rights provided by USERRA," and that the plaintiff "signed the Release 'not because he believed that the rights provided in the Agreement were more beneficial than his USERRA rights, but rather because of the severe financial distress and emotional duress he continued to suffer' as a result of the Defendants' actions." 2018 U.S. Dist. LEXIS 97971, at *5–6. In light of such allegations, the district court concluded that the defendant's affirmative defense of waiver did not appear from the face of the complaint and therefore was not a valid ground for dismissal under Rule 12(b)(6). Id.

Similarly, in Vahey, the United States District Court for the District of Columbia contrasted the facts presented in the case before it from those in Wysocki, and determined that it could not "confidently conclude that plaintiff unambiguously believed the severance package [that he accepted] was more beneficial than his right to bring a claim under USERRA." 2012 U.S. Dist. LEXIS 189423, at *15. The district court explained as follows:

> As provided by USERRA, plaintiff was entitled to reemployment and protection from discharge without cause for one year, but under the severance package he received only six months' salary. See 38 U.S.C. § 4316(c)(1). Plaintiff could have believed that six months' salary was better than nothing, as the plant was closing and hence his job no longer existed. But as plaintiff contends, he

14

> was arguably entitled to the opportunity to transfer, either because that opportunity was offered to other employees not deployed for military service or by virtue of USERRA's 'escalator' principle. Because he was not offered a transfer, it is unclear that plaintiff would have chosen the severance package over a transfer opportunity.

Id. (additional citations omitted). Accordingly, "[u]nlike in Wysocki," the district court was unable to "conclude that plaintiff weighed the benefits of his USERRA rights against the severance package and chose the more beneficial arrangement." Id. The district court therefore denied the defendant's motion to dismiss, once again noting that it could not be said from the existing record that "plaintiff consciously waived his USERRA rights in the belief that what he was receiving under the Release was more beneficial than his statutory rights." Id.

Against this backdrop, Tolle and the defendants disagree as to what standard of proof should be employed in determining whether a contractual waiver of rights is enforceable under § 4302. Consistent with Washington and Vahey, Tolle argues that the defendants' motion must be denied because they have "failed to show, as a matter of law and/or based on undisputed material facts, that [he] subjectively believed that the benefits of the [Release Agreement] were more beneficial than his USERRA rights." Pl.'s Br. in Opp'n 3, Dkt. No. 52. The defendants, on the other hand, maintain that "a 'subjective belief' standard is not required in assessing the validity of a USERRA waiver," and that the record conclusively establishes that "the benefits plaintiff received were more beneficial, or in addition to, his USERRA rights." Defs.' Reply Br. 2, 5, Dkt. No. 54.

Both sides have advanced strong arguments in favor of their respective positions on whether a "subjective belief" standard should be applied. In the court's view, a veteran's subjective understanding or motivation is one of several factors that may bear on the determination of whether a release agreement resulted in a situation more beneficial to a veteran than his USERRA rights. The court believes that other potentially relevant factors include the

15

particular terms of the agreement, the extent to which the veteran was involved in negotiating the agreement, whether the veteran obtained the advice of counsel, and a comparison of how the employer treated similarly-situated non-veteran employees. Ultimately, however, the resolution of the instant motion does not turn on whether Tolle subjectively believed that the rights provided in the Release Agreement were more beneficial than his USERRA rights. Even assuming that Tolle's subjective state of mind is immaterial or irrelevant to the analysis under § 4302, the court concludes, for the following reasons, that the defendants are not entitled to summary judgment based on the Release Agreement.

First, the terms of the Release Agreement, when viewed in Tolle's favor, do not compel the conclusion that the agreement provided rights that were more beneficial to Tolle than his USERRA rights. Under USERRA, Tolle had the right not to be denied "employment" or "any benefit of employment" on the basis of his military service. 38 U.S.C. § 4311(a). By executing the Release Agreement, Tolle agreed to receive payments totaling $29,000, in exchange for releasing the defendants from "any and all claims . . . up through the date of [his] execution," including claims relating to his employment with PocketSonics and the termination of such employment. Release Agreement ¶ 2. The court previously found such broad language to be sufficiently clear to waive Tolle's USERRA rights. However, neither this language, nor the language describing Tolle's payments as "valuable consideration," conclusively establishes that the Release Agreement passes muster under § 4302. Id. ¶ 1. As Judge Martin observed in Wysocki, "[j]ust because (1) a waiver clearly declares an intent to waive USERRA rights and (2) the veteran received substantial consideration does not permit the inference that the consideration was more beneficial to the veteran than his USERRA rights." Wysocki, 607 F.3d at 1110 (Martin, J., concurring). "Stated differently, the face of the Release does not allow for a conclusion of enforceability," and, at most, "satisfied [the defendants'] initial burden of

16

production in asserting the Release." Id. For this very reason, the court found that limited discovery was necessary in the instant case.

Second, unlike Wysocki, the record in this case includes additional evidence that would suggest that the money Tolle received for signing the Release Agreement was less beneficial than his USERRA rights, namely the evidence of how Tolle was treated in comparison to his non-veteran coworkers. It is undisputed that Tolle was the only PocketSonics employee who was not offered regular employment with Analogic, and that all of his non-veteran coworkers received compensation packages that included a sizeable base salary, bonus opportunities, paid vacation time, and other employee benefits. Likewise, the evidence produced during discovery, when viewed in Tolle's favor, indicates that his bonus/severance payments were significantly lower than the bonus payments made to similarly-situated, non-veteran employees of PocketSonics. Although the defendants correctly note that USERRA does not require "identical" treatment of veteran and non-veteran employees, Defs.' Br. in Supp. 11–12, Dkt. No. 45, an employee cannot be denied employment or employment benefits on the basis of his military service. See 38 U.S.C. § 4311(a). That is precisely what is alleged here. See Compl. ¶ 97. Based on the current record, the court is unable to conclude that Tolle's Release Agreement resulted in a situation more beneficial to Tolle than his rights under USERRA.

Third, it is not enough that Tolle received benefits that were "different" from those offered to other PocketSonics employees. Defs.' Br. in Supp. 3. For instance, in their brief in support of the pending motion, the defendants emphasize that "[n]o other PocketSonics employee was offered 'severance' in connection with the merger with Analogic," and that certain other employees instead received an FDA bonus that was contingent on the submission of the Sonic Window to the FDA for clearance. Id. at 2–3. The defendants' arguments in this regard do not carry the day on summary judgment. As emphasized above, Tolle received thousands of

17

dollars less than non-veteran coworkers at PocketSonics and no offer of full-time regular employment from Analogic. Thus, while Tolle's severance package was clearly "different," the court cannot say, as a matter of law, that it was more beneficial to Tolle than his USERRA rights.

Finally, the court is unable to conclude that Tolle's "receipt of $29,000 was, by definition, . . . 'in addition to' his USERRA rights," thereby rendering the Release Agreement enforceable under § 4302(a). Defs.' Br. in Supp. 2. This is not a case in which a policy or agreement plainly offered additional rights beyond those provided under USERRA. See, e.g., 20 C.F.R. § 1002.7(c) ("For example, although USERRA does not require an employer to pay an employee for time away from work performing service, an employer policy, plan, or practice that provides such benefit is permissible under USERRA."). Instead, the defendants maintain that Tolle waived his USERRA rights in exchange for the payments provided under the Release Agreement. The defendants have failed to explain how the severance package could be viewed as being "in addition to" Tolle's USERRA rights, if those rights were eliminated or otherwise rendered unenforceable by the Release Agreement.

For all of these reasons, the defendants are not entitled to summary judgment based on the Release Agreement. At this stage of the proceedings, the court must construe the evidence and draw all reasonable inferences in favor of Tolle. When the record is viewed in that manner, it cannot be said that there is no genuine dispute as to any material fact and that the defendants are entitled to judgment as a matter of law on the issue of whether the Release Agreement resulted in a situation more beneficial to Tolle than his USERRA rights. Accordingly, the enforceability of the Release Agreement under § 4302 cannot be decided in the defendants' favor on summary judgment.

## II. The Sufficiency of the Allegations against Rios

The defendants have also renewed their motion to dismiss the claim for individual liability against Rios on the basis that he is not an "employer" for purposes of USERRA. USERRA defines an "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including . . . a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A). USERRA's accompanying regulations likewise state that an employer includes "any person . . . that has control over employment opportunities . . . ." 20 C.F.R. § 1002.5(d)(1). Based on this language, courts have held that individuals who have control over hiring and firing are "employers" under USERRA. Croft v. Vill. of Newark, 35 F. Supp. 3d 359, 368 (W.D.N.Y. 2014) (collecting cases).

Upon review of the complaint, the court concludes that it states a plausible claim for individual liability against Rios. The complaint includes multiple allegations indicating that Rios had the power to hire Tolle to work for Analogic and that he ultimately decided not to offer Tolle a regular position with the company. See, e.g., Compl. ¶ 86 (quoting from a May 9, 2014 statement from Analogic indicating that "'Mr. Rios decided to accept the earlier recommendations of Mr. Pompeo and Dr. Blalock and not to offer Mr. Tolle a regular position with Analogic'"); Id. ¶ 87 (referencing an October 22, 2014 written statement from Rios in which he explained what "affected his decision not to hire or retain Tolle as a regular employee after Analogic's acquisition of PocketSonics") (emphasis added). Such allegations, accepted as true, allow the court to draw the reasonable inference that Rios had control over employment opportunities with Analogic and therefore was as an "employer" for purposes of USERRA. See

Iqbal, 556 U.S. at 678. Accordingly, the defendants' motion to dismiss on this ground will be denied.

## Conclusion

For the reasons stated, the defendants' renewed motion to dismiss the complaint or, in the alternative, for summary judgment will be denied. The parties shall proceed with discovery on the merits of the plaintiff's claims of discrimination in violation of USERRA.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 30th day of October, 2018.

_____
Senior United States District Judge